IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRIS LORENZO,

       Plaintiff,

                                    3:11-CV-358-PK

                                      FINDINGS AND

v.                                  RECOMMENDATION

PATRICK R. DONAHOE,

       Defendant.

PAPAK, Magistrate Judge:

       Plaintiff Chris Lorenzo, a former employee of the United States Postal Service, filed this

Family and Medical Leave Act action against defendant the Postmaster General on March 23,

2011.  The Postal Service terminated Lorenzo's employment effective July 13, 2010, on the

asserted ground that Lorenzo had violated the terms of an express written agreement between the

parties regarding his excessive absences from work.  Lorenzo alleges defendant's liability under

the FMLA for terminating his employment on the basis of absences that, according to Lorenzo's

allegations and argument, should properly have been treated as protected medical leave.  This

court has jurisdiction over Lorenzo's claim pursuant to 28 U.S.C. § 1331.

Page 1 - FINDINGS AND RECOMMENDATION

Now before the court is defendant's motion (#17) for summary judgment. I have considered the motion, oral argument on behalf of the parties, and all of the papers and pleadings on file. For the reasons set forth below, defendant's motion should be granted.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 116 S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## FACTUAL BACKGROUND[1]

Plaintiff Lorenzo began working at the main Post Office in Portland, Oregon, as a part-time, night-shift employee in 1998. In 2004, Lorenzo began working full-time in that same position.

On January 20, 2005, Lorenzo injured his back, subsequently aggravating that injury in an

---

[1] Except where otherwise indicated, the following recitation constitutes my construal of the evidentiary record in light of the legal standard governing motions for summary judgment under Federal Civil Procedure Rule 56.

incident taking place on or about March 19, 2005. At some time thereafter, possibly beginning in early 2008, Lorenzo started missing work in consequence of pain symptoms associated with his back injury.[2] On May 14, 2008, the Postal Service issued a Letter of Warning to Lorenzo regarding his irregular attendance. On November 15, 2008, the Postal Service imposed a seven-day administrative suspension[3] for his continued irregular attendance.

Lorenzo's irregular attendance continued, and on September 30, 2009, the Postal Service imposed a fourteen-day administrative suspension. The letter that was provided to Lorenzo and placed in his personnel file to document the suspension indicated that, during the preceding three months, Lorenzo had been absent from work approximately 17 full days and approximately 16 partial days. The letter further indicated that, "[w]hen asked about [his] attendance in an investigative interview, [Lorenzo] stated . . . on September 23, 2009 [that he had been] absent because [he] had a lot of illnesses th[at] year, an employee infected [him,] and because of th[e] [work]place." The letter advised Lorenzo that such explanation was "unacceptable," and that Lorenzo had "been given ample opportunity to improve [his] attendance to an acceptable level and cautioned that failure to improve [his] attendance record would result in corrective disciplinary action." The letter further advised Lorenzo that the fourteen-day administrative suspension was "intended to correct the deficiencies described [in the letter] and should be taken

---

[2] The record does not suggest that Lorenzo requested FMLA treatment for these absences or advised his supervisors that his absences might be related to a chronic medical condition at any time prior to October 2009.

[3] Postal Service administrative suspensions for mail-handling employees are "no lost time" suspensions in connection with which the disciplined employee does not lose any work time or pay, but which carry "the equivalent degree of seriousness as if [the employee] had served time-off without pay."

seriously." In particular, the letter warned that "[f]uture deficiencies w[ould] result in more serious disciplinary action being taken" and that "[s]uch action m[ight] be removal from the Postal Service." Lorenzo continued to attend work only irregularly during the subsequent months.

On October 8, 2009, Lorenzo for the first time initiated the application process for FMLA protection for an absence from the workplace. His initial application did not specify the medical condition in connection with which he sought such protection.[4] The Postal Service responded to Lorenzo's application by indicating that Lorenzo met the general eligibility requirements for protected leave under the FMLA, and requesting that Lorenzo provide, within five days, medical certification of the serious health condition in connection with which he was applying for leave. Lorenzo did not subsequently provide his employer with any such medical certification, and did not request additional time within which to do so. In consequence of Lorenzo's failure to provide the requested documentation, the Postal Service ultimately denied Lorenzo's first application for FMLA leave, and for that reason retroactively removed conditional FMLA protection from Lorenzo's absences of October 8 and 9, 2009.

On October 21, 2009, Lorenzo initiated a second FMLA application, seeking approval for intermittent leave in connection with his back injury. The Postal Service again advised Lorenzo

---

[4] Uncontroverted evidence of record establishes that Lorenzo, "not unlike other employees" of the Postal Service, developed a practice of sometimes initiating the FMLA application process for absences from work due to transitory, unprotected illnesses, either because of the possibility that such illnesses might unforeseeably develop into more serious conditions or, either alternatively or additionally, "to buy time" by taking advantage of the limited window of protection that the FMLA affords employees without medical documentation to support the health condition that caused their absences during the time the FMLA application is still pending.

that he was generally eligible for FMLA leave, and requested that Lorenzo provide medical
certification of his serious health condition within five days. Lorenzo provided the Postal
Service with the requested medical certification on November 4, 2009. The Postal Service
ultimately approved the application, and Lorenzo was granted intermittent FMLA-protected leave
to be taken with an estimated frequency of four days absence per month from the workplace in
connection with symptoms associated with his back injury.

On November 11, 2009, Lorenzo initiated a third FMLA application, without specifying
the reason for the subject November 12, 2009, absence from the workplace. The Postal Service
responded to the application by advising Lorenzo that he was generally eligible for FMLA leave,
and requesting supporting medical certification. Lorenzo did not supply the requested
certification, but the Postal Service nevertheless ultimately treated his absence from the
workplace of November 12, 2009, as protected under his approved intermittent leave initiated on
October 21, 2009.

On December 1, 2009, Lorenzo initiated a fourth FMLA application. The Postal Service
responded to the application by advising Lorenzo that he was generally eligible for FMLA leave,
and requesting supporting medical certification. Lorenzo did not subsequently supply the
requested certification, and the Postal Service ultimately denied the application.

In or around early December 2009, apparently understanding or believing that the Postal
Service might at that time have been contemplating the termination of his employment due to his
continuing frequent unprotected absences from the workplace, Lorenzo approached his manager
Barbara Zimney to request that she not "move forward on removal," explaining to her that he had
experienced numerous "issues during the month of December" that had prevented his regular

attendance. He promised Zimney that, "if she gave [him] a chance, [he] would show marked improvement after the first of the year." Lorenzo apparently advised Zimney that he was filing for bankruptcy and, in addition, was experiencing private, personal problems, and that collectively these matters were the impediment to his regular attendance at work.

Lorenzo initiated a fifth FMLA application on December 18, 2009. The Postal Service responded to the application by advising Lorenzo that he was generally eligible for FMLA leave, and requesting supporting medical certification. Lorenzo did not subsequently supply the requested certification, and the Postal Service ultimately denied the application.

Notwithstanding Lorenzo's statements to Zimney, Lorenzo's irregular attendance at work continued in early 2010. On March 24, 2010, the Postal Service issued a notice of proposed removal, by and through which the service proposed to effect the termination of Lorenzo's employment within thirty days. The notice indicated that from December 2009 through the first half of March 2010, Lorenzo had "incurred" more than 24 days of "unscheduled absences" from the workplace. The notice advised Lorenzo that he or his representative could answer the charge of irregular attendance either in person or in writing within ten days of his receipt of the notice, and that whatever information he provided would be considered, together with all of the information in his personnel records, before the Postal Service made a final decision on the proposed removal. In addition, the notice advised Lorenzo that he had the right to grieve the proposed removal through his union. Lorenzo signed the notice of proposed termination with the added notation "UNDER PROTEST and DURESS." Lorenzo elected to grieve the proposed removal, and was placed on paid administrative leave pending resolution of his grievance.

On March 31, 2010, Lorenzo and his union representative, Joe Harms, met with

Lorenzo's manager Zimney to discuss the proposed removal. At that meeting, Zimney advised Lorenzo that she would offer him a so-called "last-chance agreement" under which it would be possible for him to continue in his employment by the Postal Service. After the meeting, Lorenzo told Laurie Harms, another union representative and the Postal Service employee who usually processed or attempted to process Lorenzo's FMLA applications, that he intended to use the entirety of his paid administrative leave before he would return to work under any such last-chance agreement. On April 2, 2010, Lorenzo's union representative Joe Harms proposed the terms of such a last-chance agreement, and those terms were subsequently memorialized in a formal agreement. On April 7, 2010, Lorenzo refused to sign the last-chance agreement in its proposed form, and promptly filed a grievance through his union regarding the Postal Service's purported failure to offer him an "acceptable" last-chance agreement.

Over the next few weeks, Joe Harms worked with Postal Service management to draft a last-chance agreement whose terms might be acceptable to Lorenzo, and Lorenzo met with management on April 29, 2010, to sign an amended agreement. According to the terms of the agreement as signed by Lorenzo, he would be returned to his job duties effective May 3, 2010, in a probationary status which would last up to two years. During that period, the parties agreed that "any failure to adhere" to any of the provisions of the agreement would constitute grounds for the immediate termination of Lorenzo's employment. The agreement provided that during the probationary period he would not be absent without leave in excess of eight hours, would not be tardy in arriving to begin his work shift more than three times per quarter, would provide "satisfactory documentation" of all unscheduled absences for sick leave, and would not have more than three non-FMLA unscheduled absences from the workplace per quarter. The

agreement placed no limitation on Lorenzo's right to avail himself of FMLA-protected leave.

The agreement specifically provided that it constituted a "full and complete settlement of all issues and appeals related to all of the matters" underlying Lorenzo's proposed removal. Indeed, the agreement specifically provided that it constituted voluntary withdrawal of any pending grievances, appeals, or complaints regarding the underlying absences from work, waiver of his right to file further such grievances, appeals, or complaints, and waiver of his right to any oral hearing or further appeal of any of the underlying matters. In addition, the agreement provided that if Lorenzo's employment was terminated in consequence of his violation of any of his obligations under the agreement, he would be provided advance written notice of such termination, but that he waived his rights under his union's agreement with the Postal Service to thirty days work or pay prior to the effective date of such termination. By signing the agreement, Lorenzo further expressly waived his right to grieve or appeal from his termination other than grievance or appeal regarding the narrow question whether his conduct had violated the terms of the agreement.

Lorenzo signed the agreement and individually initialed each of the agreement's operative provisions after each was read aloud to him.

On May 6, 2010, shortly after he returned to work under the terms of his last-chance agreement with the Postal Service, Lorenzo initiated a sixth FMLA application. The Postal Service determined that, partially in consequence of Lorenzo's paid administrative leave of April 2010, Lorenzo did not meet the requirements for general eligibility for FMLA leave, specifically the requirement that he have worked not fewer than 1,250 hours during the twelve-month period preceding the application. On May 12, 2010, the Postal Service therefore advised Lorenzo of his

ineligibility for FMLA leave, and denied his application.

Lorenzo continued missing work following the May 12, 2010, denial of his sixth FMLA application, and notwithstanding that denial and the reasons provided therefor, continued to request FMLA protection for a total of seven absences from work in May and June 2010. Having already advised Lorenzo that he was ineligible for FMLA leave, the Postal Service did not respond to any of Lorenzo's further FMLA applications, but rather treated them as summarily denied.

On June 18, 2010, Lorenzo met with Postal Service management to discuss his absences from work, and to advise management of his position that, but for the paid administrative leave of April 2010, he would have met FMLA hours-worked requirements. Over the course of the interview, Lorenzo conceded that he had not responded to numerous requests for medical certification of the medical condition underlying some of his absences, but stated that he had explained the reasons for his absences orally in some cases.

On July 13, 2010, the Postal Service issued Lorenzo a notice of removal, by and through which Lorenzo's employment was terminated effective July 20, 2010. The notice specifically indicated that in May and June 2010 Lorenzo had been absent from work on unscheduled sick leave on eight occasions,[5] and that these eight absences each constituted a violation of one or more provisions of the last-chance agreement. The notice specified that the violated provisions included the provision that he would not be absent without leave for more than eight hours during the probationary period, the provision that he would have no more than three late arrivals

---

[5] The eight absences included, in addition to the seven absences for which Lorenzo unsuccessfully requested FMLA leave, an unscheduled absence of two hours on June 5, 2010, in connection with which Lorenzo did not request protected leave.

to the worksite per quarter during the probationary period, the provision that he would provide satisfactory documentation of all unscheduled use of sick leave, and the provision that he would incur no more than three days of non-FMLA unscheduled absences per quarter during the probationary period.

## ANALYSIS

The FMLA provides certain employees[6] of covered employers[7] with a right to protected leave of absence from work for specified medical reasons. Employees eligible for protected leave under the FMLA are entitled to "a total of 12 workweeks of leave during any 12-month period" for health-related medical purposes, including, in relevant part, "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Leave taken under FMLA for an employee's serious health condition may be intermittent where medically necessary. *See* 29 U.S.C. § 2612(b). Following such leave, returning employees are entitled to be returned to their original employment position or to an equivalent position, without loss of benefits. *See* 29 U.S.C. § 2614(a). The FMLA makes it an unlawful practice for any covered employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" an eligible employee's right to protected FMLA leave. 29 U.S.C. § 2615(a). Thus, "[t]he FMLA creates two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for

---

[6] Employees are eligible for protected leave under the FMLA if they have been employed by a covered employer for at least 12 months, and for at least 1,250 hours during the previous 12 months. *See* 29 U.S.C. § 2611(2)(A).

[7] Employers are "covered" for purposes of the FMLA if they employ "50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i).

Page 10 - FINDINGS AND RECOMMENDATION

protected reasons, and second, the employee has a right to return to his or her job or an

equivalent job after using protected leave." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112,

1122 (9th Cir. 2001) (citations, footnote omitted).

"When an employee requests FMLA leave, or when the employer acquires knowledge

that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the

employee of the employee's eligibility to take FMLA leave within five business days, absent

extenuating circumstances." 29 C.F.R. 825.300(b)(1). "Employee eligibility is determined (and

notice must be provided) at the commencement of the first instance of leave for each

FMLA-qualifying reason in the applicable 12-month period . . . ." *Id.* "All FMLA absences for

the same qualifying reason are considered a single leave and employee eligibility as to that reason

for leave does not change during the applicable 12-month period." *Id.*

An employee requesting FMLA leave in connection with an unforeseeable need to be

absent from the workplace is required to "provide sufficient information for an employer to

reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. 825.303(b).

> Depending on the situation, such information may include that a condition renders
> the employee unable to perform the functions of the job; that the employee is
> pregnant or has been hospitalized overnight; whether the employee or the
> employee's family member is under the continuing care of a health care provider;
> if the leave is due to a qualifying exigency, that a covered military member is on
> active duty or call to active duty status, that the requested leave is for one of the
> reasons listed in § 825.126(a), and the anticipated duration of the absence. . . .
> When an employee seeks leave for the first time for a FMLA-qualifying reason,
> the employee need not expressly assert rights under the FMLA or even mention
> the FMLA. **When an employee seeks leave due to a qualifying reason, for
> which the employer has previously provided the employee FMLA-protected
> leave, the employee must specifically reference either the qualifying reason
> for leave or the need for FMLA leave. Calling in "sick" without providing
> more information will not be considered sufficient notice to trigger an
> employer's obligations under the Act.** The employer will be expected to obtain

any additional required information through informal means. **An employee has an obligation to respond to an employer's questions designed to determine whether an absence is potentially FMLA-qualifying. Failure to respond to reasonable employer inquiries regarding the leave request may result in denial of FMLA protection if the employer is unable to determine whether the leave is FMLA-qualifying.**

*Id.* (emphasis supplied).[8]

Covered employers are entitled under the FMLA to request certification of an eligible employee's medical conditions where leave is requested in connection with the employee's serious health condition. *See* 29 U.S.C. § 2613(a); *see also* 29 C.F.R. 825.305(a). Such medical certification is sufficient for FMLA purposes if it states the date on which the serious health condition commenced, its probable duration, "appropriate" medical facts regarding the condition, and a statement that the employee is unable to perform his or her job functions. 29 U.S.C. § 2613(b)(1) to (4). If, as here, leave is requested on an intermittent basis for the employee's serious health condition, medical certification is sufficient for FMLA purposes if it additionally states the medical necessity for and expected duration of the intermittent leave. *See* 29 U.S.C. § 2613(b)(6). "Where the employee's need for leave due to the employee's own serious health condition. . . lasts beyond a single leave year . . . , the employer may require the employee to provide a new medical certification in each subsequent leave year." 29 C.F.R. 825.305(e).[9]

If required by the employer, an employee "must provide a complete and sufficient

---

[8] Moreover, "[w]hen the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. For example, an employer may require employees to call a designated number or a specific individual to request leave." 29 C.F.R. 825.303(c).

[9] The Postal Service begins its leave years for FMLA purposes with the beginning of the first new pay period in each new calendar year. Its 2010 leave year began on January 2, 2010.

certification " of the serious health condition in connection with which protected medical leave is

requested. 29 C.F.R. 825.305(c). "A certification is considered insufficient if the employer

receives a complete certification, but the information provided is vague, ambiguous, or

non-responsive." *Id.* While an employer is required to provide an employee a period of seven

days within which to cure any deficiency in an incomplete or insufficient medical certification,

"[a] certification that is not returned to the employer is not considered incomplete or insufficient,

but constitutes a failure to provide certification." *Id.* Where an employee fails to provide

requested certification in connection with unforeseeable leave, in the absence of "extenuating

circumstances" such as medical emergency making timely response to a certification request

impracticable, an employer is entitled to deny the requested leave fifteen days after the request

for certification is made. *See* 29 C.F.R. 825.313(b).

    Notwithstanding certain contrary assertions contained in Lorenzo's opposition

memorandum, at oral argument plaintiff's counsel clarified that Lorenzo makes one single claim

of interference with his FMLA rights, premised on the termination of his employment effective

July 20, 2010. It is Lorenzo's position that the termination of his employment was in violation of

his rights under the FMLA because the Postal Service wrongfully failed to afford him FMLA

protection for seven of the eight absences of May and June 2010 that were cited as the grounds

for his ultimate termination.[10] It is Lorenzo's further position that the Postal Service erred in

---

    [10] It appears to be entirely undisputed that Lorenzo never requested FMLA treatment for his two-hour unscheduled use of sick leave of June 5, 2010, and there is no suggestion in the record that Lorenzo ever offered any documentation of the medical condition occasioning that absence from work. Defendant, however, does not argue that Lorenzo's FMLA claim necessarily fails on the ground that his termination could have been justified under the last-chance agreement on the sole basis of the two-hour absence, and I decline to recommend entry of summary judgment on that basis. Although it appears clear that, under the last-chance agreement, the

finding him ineligible for FMLA protection in May and June 2010, because (he argues) it

wrongfully failed to treat him as having worked the hours he missed due to having been placed

on administrative leave in April 2010.[11]  Lorenzo takes the position that his administrative leave

hours should have been treated as hours worked because his placement on administrative leave

was itself wrongful.

      Lorenzo's theory that his termination was in violation of the FMLA therefore depends

entirely on the accuracy of his position that he is entitled to hours-worked credit for hours he

missed while on administrative leave in April 2010.  A determination in Lorenzo's favor on this

point would require both (i) the legal conclusion that an employee is entitled to hours-worked

credit for FMLA purposes for hours the employee is unlawfully prevented from working and

(ii) the factual conclusion that he was unlawfully placed on administrative leave in April 2010.

In connection with the requisite legal determination, I note that although the Ninth Circuit has

not weighed in on the question, the Sixth Circuit has held that hours an "employee want[s] to

work" but is "*unlawfully prevented* by the employer from working" should be credited to the

employee as hours worked for FMLA purposes. *See Ricco v. Potter*, 377 F.3d 599, 605 (6th Cir.

2004) (emphasis original).  By contrast, the courts of the First Circuit appear to follow the rule

---

Postal Service could have terminated Lorenzo on the basis of the June 5, 2010, absence without
reference to the seven absences for which Lorenzo unsuccessfully requested FMLA treatment in
May and June 2010, those seven absences were cited among the Postal Service's grounds for its
decision.  Because reliance on FMLA-protected leave as a "negative factor" in an otherwise
defensible termination decision violates the FMLA, *see Bachelder v. Am. W. Airlines, Inc.*, 259
F.3d 1112, 1122 (9th Cir. 2001), *see also* 29 C.F.R. § 825.220(c), the court should analyze the
merits of Lorenzo's theory that he was eligible for FMLA protection in May and June 2010.

    [11] It is undisputed that had Lorenzo worked full-time during the period of his
administrative leave of April 2010, he would have met the FMLA hours-worked requirement on
May 6, 2010.

Page 14 - FINDINGS AND RECOMMENDATION

that to be eligible for the protections of the FMLA, an employee must have "actually worked" a minimum of 1,250 hours during the twelve months preceding reliance on the FMLA. *Plumley v. S. Container, Inc.*, 303 F.3d 364, 371-372 (1st Cir. 2002).

Assuming *arguendo* that the Ninth Circuit would embrace the proposition that an employee should be credited for FMLA purposes as having worked hours the employee was prevented from working due to wrongful employer action – necessarily without regard to whether the employee either wanted to work the hours or was capable of taking action to remove the impediment to working for the employer, since it is undisputed that Lorenzo intentionally used all thirty days of the administrative leave rather than accept earlier reinstatement – Lorenzo's theory necessarily fails due to his inability to establish that his administrative leave of April 2010 was wrongfully imposed. First, it is undisputed that the April 2010 administrative leave was based on unexcused absences from work for which Lorenzo was not entitled to FMLA protection.[12] Second, by signing the last-chance agreement of April 29, 2010, Lorenzo voluntarily withdrew all grievances or appeals relating to the absences the administrative leave was based on, settled in full all disputes with the Postal Service regarding those absences, and waived the right to any further grievance or appeal regarding those absences. In consequence, Lorenzo cannot as a matter of law establish that the proposed termination of March 2010, or the administrative leave imposed in connection with it, was wrongfully imposed.

---

[12] As noted above, the March 2010 notice of removal, in connection with which Lorenzo's administrative leave was imposed, was premised on more than 24 days of unexcused absences from work. Of those absences, Lorenzo requested FMLA treatment in connection with just one day. The Postal Service properly denied Lorenzo's FMLA application as to that one day (December 2, 2009) based on his failure to provide requested medical certification of the underlying serious health condition.

Page 15 - FINDINGS AND RECOMMENDATION

Lorenzo's inability to establish the wrongfulness of the administrative leave of April 2010 is fatal to his FMLA claim. In the necessary absence of grounds for concluding that the administrative leave of April 2010 was wrongful, no grounds exist for crediting Lorenzo with the work-hours he missed during the pendency of his leave. And as noted above, it is undisputed that Lorenzo actually worked fewer than the requisite 1,250 hours during the twelve month period preceding May 6, 2010. In consequence, Lorenzo had no entitlement to FMLA protection for his absences of May and June 2010, and defendant is entitled to summary judgment on his claim.

## CONCLUSION

For the reasons set forth above, I recommend that defendant's motion (#17) for summary judgment be granted. Final judgment should be prepared.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 16 - FINDINGS AND RECOMMENDATION

copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.


Dated this 31st day of December, 2012.

Honorable Paul Papak
United States Magistrate Judge